## IN THE CIRCUIT COURT OF WHITE COUNTY, ARKANSAS

ARCARE, INC.                              PLAINTIFF

v.                     CASE NO. 73CV150

ALERE, INC.;
ALERE HOME
MONITORING, INC.                 DEFENDANTS

### CLASS ACTION COMPLAINT

Plaintiff, ARcare, Inc. ("Plaintiff"), on behalf of itself and all others similarly situated, brings this Complaint against Defendant Alere, Inc. and Defendant Alere Home Monitoring, Inc. (collectively "Defendants") for violations of the federal Telephone Consumer Protection Act. Plaintiff seeks certification of its claims against Defendants as a class action. In support, Plaintiff states as follows:

### INTRODUCTION

1. This case challenges Defendants' policy and practice of faxing advertisements without providing an adequate opt-out notice as required by law.

2. Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the fast-growing expansion of the telemarketing industry. As is pertinent here, the TCPA and its implementing regulations prohibit persons within the United States from sending advertisements via fax without including a detailed notice that allows recipients to expeditiously opt out of receiving future solicitations.

3. Junk faxes disrupt recipients' peace, drain recipients' paper, ink, and toner, and cause recipients tangible damages. Junk faxes also cause recipients to waste valuable time retrieving and discerning the purpose of the faxes; prevent fax machines from receiving and sending authorized faxes; and cause undue wear and tear on recipients' fax machines. Plaintiff

1

offers pharmaceutical services and must use its fax machine to receive communications about patients. That purpose is impeded when Plaintiff's fax machine is invaded by junk faxes.

4. The TCPA provides a private right of action and statutory damages of $500 per violation, which may be trebled when the violation is willing or knowing.

5. On behalf of itself and all others similarly situated, Plaintiff brings this case under the TCPA to recover declaratory relief, damages for violations of the TCPA, and an injunction prohibiting Defendants from future TCPA violations.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Defendants because they do business in Arkansas, including but not limited to sending the junk advertising faxes to Arkansas residents and companies, including Plaintiff ARcare.[1]

7. Venue in this district is proper because the facility that received unsolicited junk faxes from Defendants is located in White County: Bald Knob Medical Clinic.

## PARTIES

8. Plaintiff ARcare is an Arkansas non-profit corporation located in Augusta, Arkansas.

---

[1] Plaintiff originally sought to adjudicate this dispute by filing an action in the federal district court in which Defendant Alere's principal place of business is located – Massachusetts. However, Defendants took the position that Plaintiff does not have Article III standing to remedy the invasion of its statutory rights in a federal court of limited jurisdiction. *See ARcare v. Alere, Inc. et al*, Case No. 1:16-cv-12093, Dkt. No. 18 (D. Mass. Oct. 19, 2016). Consistent with Defendants' position, Plaintiff now files this action in this court of general jurisdiction consistent with Arkansas jurisprudence. *See Daughhetee v. Shipley*, 282 Ark. 596, 669 S.W.2d 886 (Ark. 1984) ("the courts are instituted to afford relief to persons whose rights have been invaded, or are threatened with invasion, by the defendant's acts or conduct and to give relief at the instance of such persons." quoting 59 Am. Jur. 2d Parties § 26 (1971)); *Chubb Lloyds Ins. Co. v. Miller County Circuit Court*, 2010 Ark. 119, 361 S.W.3d 809, 812 (Ark. 2010) (holding that the issue of standing "'is a question of state law,'" and "'federal cases based on Article III of the U.S. Constitution are not controlling.'" quoting David Newbern & John Watkins, 2 Arkansas Civil Practice and Procedure, § 7-3 at 155 (4th ed. 2006)). As detailed in this Complaint, Plaintiff's statutory rights under the TCPA have been invaded by Defendants' acts of transmitting unsolicited junk faxes without the required opt-out notice; accordingly, Plaintiff has standing to adjudicate this action in Arkansas state court.

9. Defendant Alere, Inc. is a company that is a global diagnostic device and service provider. It has its principal place of business in Waltham, Massachusetts, and is organized under the laws of Delaware.

10. Defendant Alere Home Monitoring, Inc. is a company that provides home anticoagulation monitoring services and related products. It has its principal place of business in California, and is organized under the laws of Delaware.

## FACTS

11. During the Class Period, Defendants sent an unsolicited advertisement to Plaintiff's ink-and-paper facsimile machine. The fax advertises Defendants' home INR monitoring program. The fax informs the recipient that "Our home INR monitoring program makes managing warfarin **simple and convenient** for you and your patients."(emphasis in original). The fax implores the recipient to receive further information about the service: "**Call us at 877.262.4669, option 4** to provide your Verbal Order and a representative will explain next steps. Alere Home Monitoring takes care of the rest." (emphasis in the original). A copy of this facsimile is attached hereto and marked as Exhibit A.

12. Exhibit A is an exemplary of the junk faxes Defendants send.

13. Upon information and belief, Plaintiff has received multiple fax advertisements from Defendants similar to Exhibit A.

14. Defendants also sent two other faxes advertising their home INR monitoring program during the Class Period. These faxes have been attached as Exhibit B.

15. Defendants did not have Plaintiff's prior express invitation or permission to send advertisements to Plaintiff's fax machine.

16. Defendants' faxes do not contain opt-out notices that comply with the requirements of the TCPA.

## **CLASS ALLEGATIONS**

17. In accordance with Ark. R. Civ. P. 23, Plaintiff brings this action on behalf of the following class of persons (the "Class"):

> All persons and entities who held telephone numbers that received one or more telephone facsimile transmissions that (1) promoted the commercial availability or quality of property, goods or services offered by "Alere" and (2) did not state on the first page that the fax recipient may make a request to the sender not to send any future ads and that the sender's failure to comply, within 30 days, with such a request is unlawful.

18. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is proper, as more information is gleaned in discovery.

19. Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants and the immediate family members of any such person. Also excluded are any judge who may preside over this case and any attorneys representing Plaintiff or the Class.

20. <u>Numerosity [Ark. R. Civ. P. 23(a)(1)]</u>. The Members of the Class are so numerous that joinder is impractical. Upon information and belief, Defendants have sent illegal fax advertisements to hundreds if not thousands of other recipients.

21. <u>Commonality [Ark. R. Civ. P. 23(a)(2)]</u>. Common questions of law and fact apply to the claims of all Class Members and include (but are not limited to) the following:

   a. Whether Defendants sent faxes promoting the commercial availability or quality of property, goods, or services;

  b. The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent the faxes attached as <u>Exhibit A</u> and <u>Exhibit B</u> to Plaintiff's Class Action Complaint and other unsolicited fax advertisements;

  c. Whether Defendants faxed advertisements without first obtaining the recipient's express permission or invitation;

  d. Whether Defendants' advertisements contained the opt-out notices required by the law;

  e. Whether Defendants sent fax advertisements knowingly or willfully;

  f. Whether Defendants violated 47 U.S.C. § 227;

  g. Whether Plaintiff and the other Class members are entitled to statutory damages;

  h. Whether the Court should award trebled damages; and

  i. Whether Plaintiff and the other Class Members are entitled to declaratory, injunctive, or other equitable relief.

22. <u>Typicality [Ark. R. Civ. P. 23(a)(3)]</u>. Plaintiff's claims are typical of the claims of all Class Members. Plaintiff received unsolicited fax advertisements without adequate opt-out notices from Defendants during the Class Period. Plaintiff makes the same claims that it makes for the Class Members and seeks the same relief that it seeks for the Class Members. Defendants have acted in the same manner toward Plaintiff and all Class Members.

23. <u>Fair and Adequate Representation [Ark. R. Civ. P. 23(a)(4)]</u>. Plaintiff will fairly and adequately represent and protect the interests of the Class. It is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the Class.

24. <u>Predominance and Superiority [Ark. R. Civ. P. 23(b)(3)]</u>. For the following reasons, common questions of law and fact predominate and a class action is superior to other methods of adjudication:

    (a) Proof of Plaintiff's claims will also prove the claims of the Class without the need for separate or individualized proceedings;

    (b) Evidence regarding defenses or any exceptions to liability that Defendants may assert will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

    (c) Defendants have acted and continue to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

    (d) The amount likely to be recovered by individual Members of the Class does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based on common proofs;

    (e) This case is inherently well-suited to class treatment in that:

        (i) Defendants identified persons or entities to receive their fax transmissions, and it is believed that Defendants' computer and business records will enable Plaintiff to readily identify Class Members and establish liability and damages;

        (ii) Common proof can establish Defendants' liability and the damages owed to Plaintiff and the Class;

(iii) Statutory damages are provided for in the statutes and are the same for all Class Members and can be calculated in the same or a similar manner;

(iv) A class action will result in an orderly and expeditious administration of claims, and it will foster economies of time, effort, and expense;

(v) A class action will contribute to uniformity of decisions concerning Defendants' practices; and

(vi) As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## **CLAIMS FOR RELIEF**

### **COUNT ONE**
**Violations of the Telephone Consumer Protection Act**
*47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4)*

25. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

26. The TCPA provides strict liability for sending fax advertisements in a manner that does not comply with the statute. Recipients of fax advertisements have a private right of action to seek an injunction or damages for violations of the TCPA and its implementing regulations. 47 U.S.C. § 227(b)(3).

27. The TCPA makes it unlawful to send any "unsolicited advertisement" via fax unless certain conditions are present. 47 U.S.C. § 227(b)(1)(C). "Unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

28.     Unsolicited faxes are illegal if the sender and recipient do not have an "established business relationship." 47 U.S.C. § 227(b)(1)(C)(i). "Established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 U.S.C. § 227(a)(2); 47 C.F.R. § 64.1200(f)(6).

29.     Regardless of whether the sender and recipient have an established business relationship, and regardless of whether the fax is unsolicited, a faxed advertisement is illegal unless it includes an opt-out notice on its first page that complies with the TCPA's requirements. *See* 47 U.S.C. § 227(b)(1)(C)(iii); 47 C.F.R. § 64.1200(a)(4)(iv). To comply with the law, an opt-out notice must (1) inform the recipient that the recipient may opt out of receiving future faxes by contacting the sender; (2) provide both a domestic telephone number and a facsimile machine number—one of which must be cost-free—that the recipient may contact to opt out of future faxes; and (3) inform the recipient that the sender's failure to comply with an opt-out request within thirty days is a violation of law. *See* 47 U.S.C. § 227(b)(2)(D); 47 CFR § 64.1200(a)(4)(iii).

30.     Defendants faxed unsolicited advertisements to Plaintiff that did not have compliant opt-out notices, in violation of 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

31.     Defendants knew or should have known (a) that Plaintiff had not given express invitation or permission for Defendants to fax advertisements about their services and products;

(b) that Defendants faxes did not contain a compliant opt-out notice; and (c) that Exhibit A and Exhibit B are advertisements.

32. Defendants' actions caused actual damage to Plaintiff and the Class Members. Defendants' junk faxes caused Plaintiff and the Class Members to lose paper, toner, and ink consumed in the printing of Defendants' faxes through Plaintiff's and the Class Members' fax machines. Defendants' faxes cost Plaintiff and the Class Members time that otherwise would have been spent on Plaintiff's and the Class Members' business activities.

33. In addition to statutory damages (and the trebling thereof), Plaintiff and the Class are entitled to declaratory and injunctive relief under the TCPA.

## REQUEST FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a) Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

b) Declare Defendants' conduct to be unlawful under the TCPA;

c) Award $500 in statutory damages under the TCPA for each violation, and if the Court determines the violations were knowing or willful then treble those damages;

d) Enjoin Defendants from additional violations;

e) Award Plaintiff and the Class their attorney's fees and costs;

f) Grant such other legal and equitable relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff and the Members of the Class hereby request a trial by jury.

DATED: February 2, 2017          Respectfully submitted,

By:   */s/ Randall K. Pulliam*

Randall K. Pulliam
rpulliam@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 West 7th Street
Little Rock, Arkansas 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

08/09/2016 9:22 AM    Alere    15017243305    1



Alere Home Monitoring, Inc.
6465 National Drive
Livermore, CA 94550
Office: 1 877 262.4669
Fax: 1 925 608.6978
alerecoag.com



Dear Health Care Provider:

For over 15 years, Alere Home Monitoring has offered a variety of medical devices for Patient Self-Testing. Today, our Patient Self-testers use the Roche CoaguChek® XS meter – the same easy-to-use meter technology that healthcare professionals trust to give fast, accurate INR test results in office.

You are receiving this letter because a voluntary withdrawal has been issued for one of the home INR meters we offered in the past. Details regarding the voluntary withdrawal are available at www.inr-care.com. We are not aware of any patients that you have currently using the device subject to the voluntary withdrawal. Please contact us if this is not the case.

**The Roche CoaguChek® XS is not impacted by the voluntary withdrawal and Alere Home Monitoring is not making any change to our services.** Patients may continue to use the Roche CoaguChek® XS meter as prescribed by their physician.

Our home INR monitoring program makes managing warfarin **simple** and **convenient** for you and your patients, plus it is **proven** to improve results for patients on anticoagulation therapy.[1]

Enrolling patients is easy: **Call us at 877.262.4669, option 4** to provide your Verbal Order and a representative will explain next steps. Alere Home Monitoring takes care of the rest. We will verify insurance coverage, advise the patient of any potential out-of-pocket cost, and arrange for their Face-2-Face® training on the meter.

Please call us today with any questions. Knowing now matters.™

Regards,

Alere Home Monitoring, Inc.

Confidential Notice: The information contained in this facsimile transmission is privileged and confidential, intended for the use of the addressee listed on the cover page. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or action taken in reliance on the contents of these documents is strictly prohibited (Federal Regulation 42CFR, Part 2 and 45CFR, Part 160).

1. Am J Manag Care. 2014;20(3):202-209.

© 2016 Alere. All rights reserved. The Alere Logo, Alere, Face-2-Face, and Knowing now matters are trademarks of the Alere group of companies. CoaguChek is a trademark of Roche Diagnostics GmbH.



# CONTRACT ANNOUNCEMENT

## Alere Home Monitoring, Inc.



We are pleased to announce **UnitedHealthcare** is now contracted with Alere Home Monitoring for the provision of INR home monitoring services.

**UnitedHealthcare** members who meet medical coverage criteria may qualify for PT/INR self-testing services of the Alere™ Home INR Monitoring program.

To refer a patient, please call 1.877.262.4669 or fax to 925.606.6978.

 Alere Home Monitoring, Inc.
PTINR.com®

© 2016 Alere. All rights reserved. The Alere Logo, Alere and PTINR.com are trademarks of the Alere group of companies.

Exhibit B

06/01/2016 5:58 PM          United Healthcare          → 15017243305                    02

# Alere™ Home INR Monitoring *Physician Form*

### 1. PATIENT INFORMATION
First Name, M.I., Last Name                              Date of Birth

Patient Phone Number(s)                                  Patient Email
            /

☐ Additional Patient information attached

Warfarin Start Date:

___/___/___
Month  Day   Year

**2. TARGET INR RANGE ____ TO ____**
                      LOW      HIGH
Alere Home Monitoring, Inc. will receive test results directly from patient and Fax ALL Results and Call for Al   Values <1.5 and >5.0 until Physician Office Preferences are on file. Patient will communicate INR test results based on Physician Office Preferences.

### 3. PHYSICIAN INFORMATION
Prescribing Physician Name                               NPI #

Address (Prescribing Physician)

Group Practice or Hospital Name (Prescribing Physician)   Prescribing Office phone    Office fax

Managing Physician, Practice or Clinic Name               Managing Office phone       Office fax

### INR MONITORING SYSTEM
Patient will be provided an INR Meter and strips approved for home use. Available meters do not have approval for pediatric use.

### 5. TEST FREQUENCY
☐ Weekly*
*Medicare will cover up to 52 tests per year
☐ 2-4 Times Per Month

### 6. TRAINING PREFERENCE
☐ Face-2-Face® Training arranged by Alere Home Monitoring
☐ My staff will train the patient
   (requires current Training Service Agreement)
☐ Physician confirms that this patient has received training on the prescribed monitor and home INR testing

Physician can determine Office Preferences for *Monitor type, Reporting Instructions* and *Training Preference* with an Alere Home Monitoring Sales Representative.

### 4. DIAGNOSIS* *(check up to four)*
| ICD-10-CM CODE | Description |
|---|---|
| ☐ Z95.2 | Presence of Prosthetic Heart Valve |
| ☐ I48.2 | Chronic atrial fibrillation |
| ☐ I48.0 | Paroxysmal atrial fibrillation |
| ☐ I82.501 | Chronic, unspecified VTE in deep veins of right lower extremity |
| ☐ I82.502 | Chronic, unspecified VTE in deep veins of left lower extremity |
| ☐ I82.503 | Chronic, unspecified VTE in deep veins lower extremity bilateral |
| ☐ Z86.718 | Personal History of other venous thrombosis and embolism |
| ☐ I26.99 | Other Pulmonary Embolism without acute cor pulmonale |
| ☐ D68.51 | Activated protein C resistance, primary |
| ☐ Z79.01 | Long term (current) use of anticoagulants |

Other: _____

### 7. STATEMENT OF MEDICAL NECESSITY/ PRESCRIPTION
This form serves as an order for Home INR Monitoring equipment, supplies, and related services. Equipment and supplies may be provided by either Alere or its third party vendors. Incomplete items will revert to Physician Office Preferences.

**ITEMS PRESCRIBED:** One (1) Home INR Monitoring System, and related testing materials (i.e. Test Strips and Lancets). I certify that it is medically necessary for the patient to self-test frequently in order to maintain a stable INR, optimize its therapeutic effects and avoid the complications identified on warfarin's product labeling. **DURATION:** Patient shall continue Home INR Monitoring as prescribed for as long as he/she remains capable and compliant with my instructions, but in no case for less than one year, unless otherwise noted. ☐ Other.

**Medical Necessity:** I further certify that the patient's medical record contains supporting documentation to substantiate this medical need. I certify that this patient has been on warfarin therapy for >90 days. I certify that this patient will undergo a training program which include the Face-2-Face® training protocols to ensure that he/she is capable of self-testing. The patient or their caregiver has no condition that makes self-testing unsafe (e.g. cognitive disorders). I agree to notify Alere if the patient or their caregiver develops a condition that makes self-testing unsafe.

**8. PHYSICIAN SIGNATURE:** (In compliance with CMS Pub. 100-08, Transmittal 327, Section 8898.3. Stamped Signatures are not acceptable.)

_____   Date _____

### FAX COMPLETED FORM AND PATIENT INFORMATION TO 1.925.606.6978
Alere Home Monitoring, Inc. • 6465 National Drive • Livermore, CA 94550 • Phone 1.877.262.4669 • ptinr.com
Submit your prescription electronically with e-Prescribe at alerecoag.com

**Alere™** Knowing now matters:                                    A/C # _____

                                                                   UH1606

*Listed codes from CMS Manual System PUB 100-20 *Medicare Claims Processing*. Coverage determination is based on specific health plan guidelines.
© 2016 Alere. All rights reserved. The Alere Logo, Alere, Face-2-Face and Knowing now matters are trademarks of the Alere group of companies. All trademarks referenced are trademarks of their respective owners. PN:1611091-08 3/16