**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| ARcare, Inc., an Arkansas Corporation, on behalf of itself and all others similarly situated | ) ) ) | **No. 4:17-cv-147-KGB** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Alere Home Monitoring, Inc. | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**</u>
<u>**OF CLASS ACTION SETTLEMENT**</u>

## I.    <u>INTRODUCTION</u>

Plaintiff ARcare, Inc. ("Plaintiff" or "Settlement Class Representative"), on behalf of itself and the putative Class Members, and Defendant Alere Home Monitoring, Inc. ("AHM" or "Defendant") have reached a proposed settlement (the "Settlement") in this class action (the "Action") and now seek an Order from the Court: (i) granting preliminary approval of the proposed Settlement; (ii) directing that notice of the proposed Settlement be given to members of the Settlement Class in the proposed form and manner; and (iii) scheduling a hearing before the Court to determine whether the proposed Settlement should be finally approved. As detailed herein and in the Class Action Settlement Agreement (the "Settlement Agreement"),[1] which is being contemporaneously filed herewith, the Settlement provides significant and material benefits to the Settlement Class, including a cash settlement of $1,000,000.00, and was reached only after intensive litigation, discovery and arm's length negotiations including a formal mediation. Plaintiff's Counsel believes this recovery represents an excellent recovery for the Class.

---

[1] All capitalized terms not specifically defined herein shall have the same meaning as set forth in the Settlement Agreement.

Further, the proposed Notice Plan is designed to provide individualized notice to all Settlement Class Members identified through a search of Defendant's records, followed by a streamlined and simple claims process. Accordingly, Plaintiff respectfully submits that the Court should preliminarily approve the terms and conditions of the Settlement and provide for notice to the Settlement Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On October 19, 2016, Plaintiff filed a complaint against AHM and Alere, Inc. ("Alere") in the District of Massachusetts, asserting that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") as a result of Defendants' alleged policy and practice of faxing unsolicited advertisements without providing the requisite opt-out notices. The TCPA makes it unlawful to send facsimile advertisements without a proper opt-out notice if the sender did not receive prior express permission from the recipient, a prohibition commonly referred to as the junk-fax ban provision of the TCPA. The TCPA provides for statutory damages of $500 for each violation of the junk-fax ban provision, which may be trebled to $1,500 per violation if a defendant's conduct is shown to be willful, knowing, or intentional.

On January 27, 2017, Defendants filed a Motion to Dismiss the complaint, alleging, *inter alia*, that the federal court lacked Article III jurisdiction over the case. To avoid a challenge over federal jurisdiction, ARcare voluntarily dismissed its complaint on February 2, 2017. ARcare re-filed its complaint, *i.e.* the operative "Complaint", against AHM and Alere in the Circuit Court of White County, Arkansas – where the Plaintiff resides and the alleged offending faxes were received. D.E. 2. Attached to the Complaint as Exhibits A and B are alleged exemplary unsolicited advertisements, without the requisite opt-out notices, sent to Plaintiff's facsimile machine. The

Complaint was brought by Plaintiff individually and on behalf of a putative class of fax recipients (the "Class").

On March 7, 2017, Defendants removed the matter to the Eastern District of Arkansas. D.E. 1.  On March 20, 2018, Plaintiff moved to remand the action to state court, arguing removal of the action was improper as Defendants had previously argued that Plaintiff lacked standing in federal court to pursue claims under the TCPA related to the very faxes attached as exhibits to the Complaint.  D.E. 4, 7.

On that same day, Defendants filed a Motion to Dismiss[2] in federal court.  D.E. 8, 9. Specifically, AHM filed a Motion to Dismiss denying liability, asserting, among other defenses, that the faxes sent by AHM were not "advertisements," but rather "informational communications" that are not prohibited under the TCPA.  Plaintiff timely filed its opposition to Defendants' Motion to Dismiss on April 3, 2018.  D.E. 15.  The parties filed reply briefs in support of their respective motions.  D.E. 16, 20.

On November 8, 2017, this Court denied Plaintiff's Motion to Remand.  D.E. 22.  And on January 5, 2018, the Court denied AHM's Motion to Dismiss Plaintiff's TCPA claim for failure to state a claim and denied AHM's Motion to Dismiss Plaintiff's class allegations.  D.E. 27.

Subsequently, discovery commenced and each party propounded interrogatories and requests for production to the opposing party.  In its Objections and Responses to Plaintiff's First Set of Interrogatories, Defendant stated that it had sent the fax identified in and attached to the Complaint as Ex. A to 19,320 recipients, and that it had sent the fax identified in and attached to the Complaint as Ex. B to 28,444 recipients.

---

[2] Alere separately argued that this Court lacked personal jurisdiction over it. That motion was granted. D.E. 26.  Therefore, AHM is the sole remaining Defendant in this Action.

On August 15, 2018, the parties jointly filed a Motion to Stay, requesting a temporary stay pending mediation.  D.E. 50.  By order dated August 17, 2018, the Court granted the parties' motion.  D.E. 51.

On October 24, 2018, the parties engaged in a full-day (approximately twelve hours) mediation session conducted by a well-respected and experienced Arkansas mediator, Richard Ramsay.  Following mediation, the parties continued to engage in active negotiations in attempts to reach settlement.  Prior to finalizing a settlement agreement, Plaintiff conducted an investigation to confirm the accuracy of Defendant's discovery responses, in addition to confirming AHM's business practices related to all aspects of faxing to customers and potential customers, including the scope and frequency of such faxes.  As part of this detailed due diligence, Plaintiff reviewed Defendant's client management database and AHM's related process for gathering consent to fax, conducted an in-person, multiple-hour interview of an AHM senior operational official, and obtained sworn testimony from that same AHM senior operational official.  Then, on April 22, 2019, the parties reported to the Court that Plaintiff had agreed to the terms of the Settlement Agreement, and that Defendant was undergoing final approval.  Subsequently thereto, the parties executed the Settlement Agreement on May 7, 2019, which memorializes the terms and conditions of the proposed Settlement and embodies all relevant exhibits thereto.  A copy of the Settlement Agreement is being contemporaneously filed herewith.

## III.   **THE PROPOSED SETTLEMENT**

Defendant has agreed to make available $1,000,000.00 in cash (the "Settlement Fund") for the benefit of eligible Settlement Class Members, inclusive of any administrative and/or court-awarded fees and expenses.  The Settlement Agreement defines the Settlement Class as follows:

4

> Subscribers of facsimile telephone numbers to which there was a successful transmission of one or more facsimiles by or on behalf of any of the Released Parties from January 1, 2013 through the date of Preliminary Approval of the Settlement Agreement that related in any way to the business of AHM, and/or any products, goods, or services offered by AHM.

Settlement Class Members who submit a timely and valid Claim Form will be eligible to receive a pro rata distribution of the Net Settlement Fund.  For any unclaimed amounts remaining in the Net Settlement Fund after the first distribution, a second distribution shall be made to Settlement Class Members that cashed their initial checks if economically feasible.  If a secondary distribution is deemed economically infeasible, Plaintiff's Counsel shall move the Court for distribution of the remaining funds as a *cy pres* award to a charity agreed to by the parties and approved by the Court.  *In no event* shall any unclaimed amounts in the Net Settlement Fund revert back to Defendant.

In exchange for the consideration from the Defendant, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims that have been or could have been asserted against the Released Parties by any member of the Settlement Class in this Action, as set forth in the Settlement Agreement.

## IV.    PROPOSED SCHEDULE OF EVENTS

Consistent with the provisions of the Settlement Agreement, Plaintiff respectfully proposes the following schedule for the various Settlement events:

- Within thirty (30) days of entry of the Preliminary Approval Order, the Fax Notice (Ex. E to the Settlement Agreement) and Mailed Notice (Ex. B to the Settlement Agreement) (the "Notice Date") must be disseminated to Settlement Class Members (*see* Settlement Agreement ¶ 42(a));

- Within thirty (30) days of entry of the Preliminary Approval Order, the Settlement Website must be created (*see* Settlement Agreement ¶ 42(b));

- All requests for exclusion from the Class or objections to the Settlement, the request for attorneys' fees and expenses, and the request for an incentive award must be postmarked no later than 120 days after the date of the Preliminary Approval Order (*see* Settlement Agreement ¶ 47);

- All Claim Forms must be postmarked no later than 120 days after the date of the Preliminary Approval Order (*see* Settlement Agreement ¶ 45);

- No later than forty-five (45) days before the Final Approval Hearing, the motions in support of the Settlement and Class Counsel's application for award of attorneys' fees and expenses must be filed;

- At the Court's convenience, but no earlier than 145 days after entry of the Preliminary Approval Order, the Final Approval Hearing must occur (*see* Settlement Agreement ¶¶ 12 and 51).

## V.     LEGAL ANALYSIS

### A.     Applicable Legal Standards

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis.  The procedure for judicial review of a proposed class action settlement is well established:

> As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.

*Schoenbaum v. E.I. Dupont De Nemours & Co*., Case No. 4:05CV01108, 2009 U.S. Dist. LEXIS 114080, at *13 (E.D. Mo. Dec. 8, 2009) (quoting Manual for Complex Litigation (Fourth) § 21.632 (2004)); *see, e.g., Liles v. Del Campo,* 350 F.3d 742 (8th Cir. 2003); *Heldt v. Payday Fin*., Case

No. 13-cv-03023, 2016 U.S. Dist. LEXIS 2646, at \*18-19 (D.S.D. Jan. 8, 2016). Importantly, "[b]ecause class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *In re M.L. Stern Overtime Litig.,* Case No. 07-CV-0118, 2009 U.S. Dist. LEXIS 31650, at \*9-10 (S.D. Cal. April 13, 2009) (quoting A. Conte & H. B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002)); *see also Braden v. Foremost Ins. Co. Grand Rapids,* Case No. 4:15-cv-4114, 2018 U.S. Dist. LEXIS 88547, at \*3 (W.D. Ark. May 21, 2018) ("When making a preliminary fairness evaluation, the 'fair, reasonable, and adequate' standard imposed by Rule 23(e)(2) is lowered, the Court's focus is on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." (internal quotations and citation omitted)); *Larey v. Allstate Prop. & Cas. Ins. Co.*, Case No. 4:14-cv-4008, 2017 U.S. Dist. LEXIS 155865, at \*3 (W.D. Ark. Sept. 25, 2017) (same).

At this juncture, Plaintiff requests only that the Court grant preliminary approval of the proposed Settlement and provide for notice to the Settlement Class. Applying the standards above, preliminary approval should be granted because the proposed Settlement and the proposed form and program of providing notice satisfy the requirements for preliminary approval in all respects. *See Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at \*14 ("a proposed settlement is presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise."); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

### B.    The Proposed Settlement Warrants Preliminary Approval

As a matter of public policy, settlement is a strongly favored mechanism for resolving disputed claims. *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). "In the class action context in particular, there is an overriding public interest in favor of settlement." *Armstrong v. Bd. of School Directors*, 616 F.2d 305, 333 (7th Cir. 1980) (citation and internal quotation marks omitted). As the court stated in *Dekro v. Stern Bros. & Co.*, "[s]ettlement is the preferred method for the disposition of complex litigation." 571 F. Supp. 97, 101 (W.D. Mo. 1983).

Turning to the specifics of this Action, preliminary approval of the Settlement should be granted because the Settlement is within the range of possible approval and there is no reason to doubt its fairness. To grant preliminary approval and justify providing notice to the Settlement Class, the Court need only conclude that the proposed Settlement is "within the range of possible approval" and "does not disclose grounds to doubt its fairness." *See Manual for Complex Litigation* § 30.41, at 237 (3d ed. 1975). Such a finding "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n-E. R.R.s,* 627 F.2d 631, 634 (2d Cir. 1980) (citing *Manual for Complex Litig.,* § 1.46 at 55 n.10 (1977)). Here, there is sufficient "probable cause" to warrant preliminarily approving the proposed Settlement and providing notice to the Settlement Class.

### 1.    The Settlement Falls Within the Range of Possible Approval

The value of the proposed Settlement falls well within the range of a reasonable settlement. The determination of a "reasonable" settlement is not susceptible to a mathematical equation

yielding a particularized sum.  *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any

case there is a range of reasonableness with respect to a settlement – a range which recognizes the

uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily

inherent in taking any litigation to completion"); *cf. Briles v. Tiburon Fin., LLC*, Case No.

8:15CV241, 2016 U.S. Dist. LEXIS 100249, at *2 (D. Neb. Aug. 1, 2016).  As such,

> a cash settlement amounting to only a fraction of the potential cash recovery (and
> the present proposed settlement is not such a recovery) does not in itself render the
> settlement unfair or inadequate.  In fact there is no reason, at least in theory, why a
> satisfactory settlement could not amount to a hundredth or even a thousandth part
> of a single percent of the potential recovery.

*Holden v. Burlington Northern Inc*., 665 F. Supp. 1398, 1413 (D. Minn. 1987).

Here, the proposed Settlement provides eligible Settlement Class Members[3] with a pro rata

distribution, estimated to yield individual payments of approximately $125.00, a payment

equivalent to 25% of the $500 statutory damages amount provided for under the TCPA.  Plaintiff's

Counsel believe this is an *excellent* result for the Settlement Class Members based upon the claims

and Defendant's defenses.  *See Degnen v. Gerzog*, No. 4:15-CV-1103, D.E. 47 (E.D. Mo. April

20, 2016) (approving $1.6 million settlement that provides for $100 per claim); *Ashkenazi v.

Bloomingdale's, Inc.*, No. 3:15-CV-2705, D.E. 55 (D.N.J. Dec. 21, 2018) (approving settlement

valued at $1.4 million that provides for $25 cash payments or $50 vouchers per claim); *Family

Med. Pharmacy, LLC v. Trxade Grp., Inc.*, No. 15-CV-590, D.E. 38 (S.D. Ala. Mar. 17, 2017)

(approving settlement providing for $200,000 cash plus 5% discount on next purchase with

defendant Westminster).

While Plaintiff has calculated the maximum value of its claims to be a figure larger than

the settlement amount, when the maximum value of Plaintiff's and the Class's claims are

---

[3] To be eligible, a Settlement Class Member must timely submit a completed Claim Form.

discounted by the identifiable risks, including Defendant's defenses, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Holder,* 665 F. Supp. at 1413 (recognizing that a settlement valuation based on the optimal amount a class could recover is inappropriate and a settlement just needs to be reasonable, adequate, and fair); *see also West Virginia v. Chas. Pfizer & Co*., 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and not at some distant time in the future.  The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation.  It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (citations omitted); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is no guarantee of ultimate success").  More particularly, the proposed Settlement provides Settlement Class Members immediate benefits without the risks and costs of further litigation.  *See Holden*, 665 F. Supp. at 1413-14 (noting that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case).

In contrast to these tangible, immediate benefits, the outcome of continued litigation and a trial against the Defendant is uncertain.  As set forth above, Defendant has vigorously denied Plaintiff's allegations of wrongdoing.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986)).  Specifically, Defendant has asserted significant defenses which present a challenge for Plaintiff to prevail in motions for summary judgment and class certification.

It is important to note that at the time this case was filed, the operative Federal Communication Commission's (the "FCC") regulation required that *all faxes*, even those sent with prior express invitation or permission, have an opt-out notice containing the elements required by the TCPA and the FCC (the "Solicited Fax Rule"). *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3812 (2006); *see also Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013) (holding that regulation binding on courts).

However, after this case was filed, the Multidistrict Litigation Panel assigned petitions challenging the Solicited Fax Rule to the D.C. Circuit, which made it "the sole forum for addressing . . . the validity of the FCC's rule[]." *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008) (quoting *MCI Telecomm. Corp. v. U.S. W. Commc'ns*, 204 F.3d 1262, 1267 (9th Cir. 2000)). The D.C. Circuit held that Solicited Fax Rule was an abuse of the FCC's delegated authority under the TCPA. *See Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078 (D.C. Cir. 2017). Its decision striking down the Solicited Fax Rule became "binding outside of the [D.C. Circuit]." *Peck*, 535 F.3d at 1057 (quoting *MCI Telecomm. Corp.*, 204 F.3d at 1267). As a result, the FCC entered an order ultimately eliminating the Solicited Fax Rule. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Junk Fax Prevention Act of 2005*, 2018 WL 6017682 (F.C.C.) (Nov. 14, 2018). Accordingly, Plaintiff could no longer rely solely upon the lack of sufficient opt-out language, but would also have to establish that Defendant lacked the requisite level of consent from Plaintiff and the Class prior to sending the faxes in question. From the outset, AHM has maintained that it systemically obtains fulsome and legally-compliant consent from its fax recipients prior to sending faxes.

Therefore, based on Plaintiff's Counsel's assessment of the record, absent settlement, Defendant would be able to present significant and compelling evidence that individualized issues regarding consent preclude class certification.  The Sixth Circuit's recent decision in *Sandusky Wellness Ctr., LLC v. ASD Specialty HealthCare, Inc*., 863 F.3d 460 (6th Cir. 2017) is illustrative. There, the plaintiff relied on the now-defunct Solicited Fax Rule.  *Id.* at 467-68.  With that stripped away, the Sixth Circuit held that "if Sandusky's 40,343-member class were certified, the district court would be tasked with filtering out those members to whom Besse was not liable—those individuals who solicited the Prolia fax.  Regardless of other questions that may be common to the class, identifying which individuals consented would undoubtedly be the driver of the litigation." *Id.* at 468; *see also Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328–29 (5th Cir. 2008) (denying class certification on the basis that "because the evidence shows that the recipients' fax numbers were collected over time and from a variety of sources, individual inquiries of the recipients are necessary to sort out which transmission was consented to and which was not."); *Gorss Motels, Inc. v. Brigadoon Fitness Inc.*, No. 1:16-CV-330-HAB, 2019 WL 2171506, at *5 (N.D. Ind. May 20, 2019) (issue of individual consent precluded class certification for facsimile numbers of the defendant's past and present customers obtained through accounting systems and trade shows); *Jamison v. First Credit Servs., Inc.*, No. 12 C 4415, 2013 WL 3872171, at *5–6 (N.D. Ill. July 29, 2013) (issue of individual consent precluded class certification for phone numbers in company database obtained from customers through sales contracts, credit applications, customer-provided insurance information, and through customer contact with customer services representatives).

Ultimately, had Plaintiff, for sake of argument, successfully obtained class certification and this Action had continued to trial, it is impossible to predict with any certainty whether the jury or

this Court would find favor with the Plaintiff's allegations or with the Defendant's defenses. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id*.

Clearly, in light of the foregoing, the benefits conferred by the Settlement are within the range of reasonableness. Thus, preliminary approval of the proposed Settlement should be granted.

2.     There Is No Reason to Doubt the Fairness of the Settlement

Because the Settlement in this Action is the product of extensive arm's length negotiations, there is no reason to doubt its fairness. A proposed settlement that is the result of arm's length negotiations by class counsel is presumptively fair and reasonable. *See* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002). Here, as detailed above, the Settlement was reached only after extensive factual investigation, motions practice, discovery, and mediation before a well-respected mediator. Moreover, as noted above, after the parties' day-long mediation, Plaintiff conducted thorough confirmatory discovery and then spent months negotiating the terms and conditions of the Settlement Agreement. Undoubtedly, Plaintiff's Counsel had a wealth of information at their disposal before entering into the aforementioned settlement negotiations. Consequently, Plaintiff's Counsel were able to adequately assess the strengths and

weaknesses of Plaintiff's case and balance the benefits of settlement against the risks of further litigation.

Equally important, counsel for Defendant vigorously defended AHM's position and demonstrated their commitment to litigate this Action to its conclusion. Hence, the proposed Settlement represents concessions by both parties after hard-fought litigation and negotiations conducted by experienced counsel on both sides who were thoroughly familiar with the factual and legal issues.

  **C.**  **The Proposed Notice Program Is Adequate**

The proposed Preliminary Approval Order will require the Parties to notify Settlement Class Members of the Settlement by faxing a copy of the Fax Notice (Ex. E to the Settlement Agreement) at the last available facsimile number listed in Defendant's records. The Fax Notice advises Settlement Class Members of the essential terms of the Settlement, the rights of Settlement Class Members to participate in the Settlement, the rights of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, and will provide specifics on the date, time and place of the Final Approval Hearing. Thus, the Fax Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Fax Notice also contains information regarding counsel's fee application and Plaintiff's request for an incentive award.

In addition, the Fax Notice will be supplemented with (1) a Mailed Notice, for those Class Members for which a facsimile number is not available and/or Fax notice was unsuccessful after two attempts, and (2) a Settlement Website, which will provide a clearinghouse for information about the Settlement as well as an opportunity to download a Claim Form and submit a completed

14

Claim Form online. Moreover, the Claim Form is a simple form that is easy to complete without assistance.

Accordingly, the form and manner of notice proposed here fulfills all of the requirements of Rule 23 and due process.

### D.    Conditional Certification of the Settlement Class is Appropriate

In order to proceed with the preliminary approval process, it is necessary for the Court to preliminarily certify a class for purposes of the Settlement. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part, that a class action may be maintained if:

> (b)(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

As set forth below, all of the requirements of Rule 23 are met in this case, justifying preliminary certification of the proposed Settlement Class for settlement purposes only.

### 1.    The Class Is Sufficiently Numerous

To satisfy the numerosity requirement, "a plaintiff need not present a precise calculation of the number of class members [, rather] it is permissible for [a] court to rely on reasonable

15

inferences drawn from available facts." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 2012 U.S. Dist. LEXIS 85171, 2012 WL 2339267 (S.D.N.Y. June 19, 2012).  Further, many courts recognize that numerosity is satisfied at a level of 40 members.  *See Riedel v. XTO Energy, Inc.*, 257 F.R.D. 494, 508 (E.D. Ark. 2009) (noting that class numbers in the 40-or-more range should have a reasonable chance of success on the basis of number alone); *see also Masound v. 1285 Bakery, Inc.,* 2017 U.S. Dist. LEXIS 14927 (S.D.N.Y. Jan. 25, 2017).

Here, Plaintiff has determined, through formal and confirmatory discovery that the Settlement Class contains thousands of members.  Moreover, the Settlement Class Members are geographically dispersed, making joinder impracticable.  As such, the Settlement Class clearly satisfies the numerosity requirement.

2.    There Are Common Issues of Law or Fact Common to the
Settlement Class

To certify the Settlement Class there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is established where a class-wide proceeding may "generate common answers apt to drive the resolution of the litigation."  *Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  The commonality requirement poses "a low hurdle."  *In re Sumitomo Copper Litig*., 194 F.R.D. 480, 482 (S.D.N.Y. 2000) (citation omitted).  Indeed, "even a single common question will do."  *Dukes*, 131 S. Ct. at 2551 (citation omitted); *see also In re IndyMac Mortgage-Backed Sec. Litig*., 286 F.R.D. 226, 233 n.50 (S.D.N.Y. 2012) (same).

In this case, questions of law or fact common to the Class include *inter alia*, the following:

(1)    Whether Defendant transmitted faxes advertising the commercial availability of property, goods, or services;

16

(2)     Whether Defendant transmitted facsimile advertisements without first obtaining the recipient's prior express invitation or permission; and

(3)     Whether Defendant's facsimile advertisements contained the opt-out notice required by the TCPA.

Consequently, there are fundamental, common issues of law and fact.  *See Eastwood v. Southern Farm Bureau Cas. Ins. Co*., 291 F.R.D. 273, 278 (W.D. Ark. 2013) (finding commonality on similar allegations).

3.     <u>The Claims of Plaintiff Are Typical of the Claims of the Settlement Class</u>

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is "not demanding."  *Tsereteli v Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (citation omitted).  It only requires showing that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig*., 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted); *see also DeBoer v. Mellon Mortgage. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff.").

Here, the claims all involve Defendant's conduct toward the Settlement Class members, and Plaintiff's and the Class' claims are based on the same legal theories.  Thus, Plaintiff's claims are typical of those of the claims of the Settlement Class, and it is an appropriate class representative. *See Eastwood*, 291 F.R.D. at 279.

4.    Plaintiff and Plaintiff's Counsel Will Fairly and Adequately
Represent the Interests of the Settlement Class

The requirement of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor,* 521 U.S. 591, 594 (1997); *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) (stating that Rule 23(a)(4)'s typicality requirement serves to ensure "that the members of the class possess the same interests, and that no fundamental conflicts exist among the members.").

Here, Plaintiff has retained counsel with significant expertise in complex civil litigation. More specifically, the law firm of Carney Bates & Pulliam, PLLC ("CBP") is a nationally recognized law firm in the field of complex class action litigation, also having experience in the TCPA context and representing its clients on wide-ranging related matters.  In addition, CBP is well-capitalized, allowing them to dedicate considerable resources to the fullest extent necessary to achieve the best possible result for class members.  Thus, Plaintiff's Counsel is unquestionably qualified to undertake this litigation.

Moreover, Plaintiff and the Settlement Class desire the same outcome of this litigation, namely to cease certain alleged faxing practices of Defendant that Plaintiff asserts are unlawful, and to retrieve the largest possible monetary recovery from the Defendant.  Thus, Plaintiff believes its claims coincide identically with the claims of the Settlement Class.  Additionally, because of this, Plaintiff has vigorously prosecuted this case for the benefit of all members of the Settlement Class.  Further, there is no conflict or any antagonism between Plaintiff and the Settlement Class. Consequently, Plaintiff has satisfied the adequacy requirement.

5.    <u>The Questions of Law and Fact in this Action Predominate
over any Individual Issues and a Class Action Is the Superior
and Most Efficient Means to Adjudicate the Claims</u>

Certification is appropriate under Rule 23(b)(3) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem Prods. v. Windsor,* 521 U.S. 591, 591-94 (1997). These requirements are satisfied in this case.

a.    *Common Questions of Law and Fact Predominate*

In analyzing the predominance factor, the United States Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 622 (1997). This is satisfied where the questions that are capable of proof by generalized evidence "are more substantial than the issues subject only to individual proof." *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015). In the settlement context, "the predominance inquiry will sometimes be easier to satisfy" because settlement eliminates manageability problems related to trial. *In re Am. Int'l Grp., Inc. Sec. Litig*., 689 F.3d 229, 240 (2d Cir. 2012). As further discussed by the court in *In re Am. Int'l Grp., Inc. Sec. Litig*.:

> '[S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context. A key question in a litigation class action is manageability – how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried. Conversely, other inquiries assume heightened importance and heightened scrutiny because of the danger of conflicts of interest, collusion, and unfair allocation.'

*Id*. at 239 (quoting *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 335 (3d Cir. 2011)). Because the parties are settling, whether individual issues predominate does not pose an issue to certifying a settlement class, and there are no manageability issues.

19

> b.    *A Class Action Is the Superior Method of Adjudicating*
> *This Case*

The second prong of Rule 23(b) is satisfied by the proposed Settlement.  As explained in *Amchem* and *In re Am. Int'l Grp., Inc. Sec. Litig,* "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620; *In re Am. Int'l Grp., Inc. Sec. Litig,* 689 F.3d at 239.  Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

Because Rule 23(a) and 23(b)(3) are satisfied, the Court should provisionally certify the proposed Settlement Class for purposes of settlement and the issuance of notice.

## VI.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order, substantially in the form of the proposed Preliminary Approval Order: (i) granting preliminary approval of the proposed Settlement, (ii) directing that notice of the proposed Settlement be given to members of the Settlement Class in the proposed form and manner, and (iii) scheduling a hearing before the Court to determine whether the proposed Settlement should be finally approved.

Dated:  May 31, 2019                    Respectfully submitted,

                                        /s/ Randall K. Pulliam
                                        Randall K. Pulliam (ABN 98015)
                                        Hank Bates (ABN 98063)
                                        **CARNEY BATES & PULLIAM, PLLC**
                                        519 W. 7th St
                                        Little Rock, AR  72201
                                        Tel:  (501) 312-8500
                                        Fax:  (501) 312-8505
                                        rpulliam@cbplaw.com
                                        hbates@cbplaw.com

                                        *Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 31, 2019, I caused a copy of the foregoing to be electronically filed with the Clerk of Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

                                        /s/ Randall K. Pulliam
                                        Randall K. Pulliam (ABN 98015)